**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0375n.06
Filed: May 26, 2006

**No. 05-3598**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DONALD MAIDEN,

    **Plaintiff-Appellant,**

v.

INDIANA AND OHIO RAILWAY
COMPANY, et al.,

    **Defendants-Appellees.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

_____/

**BEFORE:**    **MARTIN, GUY, AND CLAY, Circuit Judges.**

    **CLAY, Circuit Judge.**  Plaintiff, Donald Maiden, appeals the district court's grant of summary judgment to Defendant Ohio Railway Co., on Plaintiff's Federal Employers' Liability Act, 45 U.S.C. § 51 ("FELA"), claim in which Plaintiff sought to recover damages from Defendant for injuries he sustained while working as a railroad conductor for Defendant. For the reasons set forth below, we **REVERSE** the district court's grant of Defendant's motion for summary judgment.

I.

    At approximately 2:00 a.m. on August 10, 2002, Plaintiff, a conductor employed by Defendant, was injured while walking through Defendant's railyard in Lima, Ohio toward an arriving train, which stopped short of the designated "re-crew" area. According to Plaintiff, "I was

on my way to get on the train, you know, carrying my grips and everything, was crossing over a set of tracks, and stepped on a large chunk of – call it ballast. My foot rolled, and when it did, I felt my knee pop and I heard it pop . . . ." (J.A. at 6-7.) Plaintiff testified that he was carrying his grip, lunch pail, lantern, and was wearing his radio. Plaintiff testified during his deposition that he did not see the piece of ballast[1] that he stepped on because the area was inadequately lit. Plaintiff did not immediately notice his injury and continued with his duties and boarded the train bound for Cincinnati as planned. As he traveled, Plaintiff's leg began to swell and the pain intensified. When he reached the Tyersville Road stop, Plaintiff notified dispatch that he needed to go to the hospital. Plaintiff was taken to the hospital where he was treated and released with instructions to see an orthopedic surgeon.

Plaintiff filed the present FELA action on January 8, 2003, claiming that he sustained an injury as a result of Defendant's negligence, and for wrongful discharge, claiming that he was terminated in retaliation for making a claim. The district court granted Defendant's motion for summary judgment on the wrongful discharge claim on January 28, 2005. That decision is not being appealed to this Court.

On January 10, 2005, Defendant moved for summary judgment on the FELA claim, arguing that Plaintiff could not prove causation because Plaintiff did not know what he stepped on that

---

[1]In his brief, Plaintiff describes two different types of ballast. He defines yard ballast as a smaller stone that is often used at "re-crew locations where railroaders are expected to walk because it is more stable and safer to walk on than smaller stone." (J.A. at 9.) Road ballast (main line ballast) is "larger rock that is used on the mainline where employees do not regularly walk." (J.A. at 9.) Plaintiff alleges that the area where he was required to board the train was "within yard limits" but was not equipped with smaller walking ballast.

caused his injury. Plaintiff filed a response on February 10, 2005, arguing that it was not necessary to identify the object upon which he stepped, in order to prove Defendant's negligence.

In support of his case, Plaintiff submitted an expert report from engineer Raymond A. Duffany, a railway engineer consultant, who concluded that Plaintiff was injured when "a large piece of ballast-like material rolled under his footing causing his knee to 'pop.'" (J.A. at 127.) Duffany opined that Defendant failed to maintain a reasonably safe workplace when it required Plaintiff to walk several hundred feet on large ballast to his train. Duffany stated that the "walking conditions were hazardous and there was inadequate lighting," and that if the train had stopped at the normal location, there would have been adequate lighting and a safe walking surface. (J.A. at 127.)

Plaintiff also submitted pages from a report issued by the United States Department of Transportation ("DOT"), entitled "An Examination of Railroad Yard Worker Safety." In a section entitled, "Best practices for Fostering a Positive Safety Climate and Reducing Injuries," the DOT suggested that companies provide adequate lighting for work at night . . . a handheld lantern or flashlight are not sufficient, and that companies "remove trash, debris, and other slip and trip hazards from the yard on a regular and frequent basis." (J.A. at 133-34.)

Nabor Muniz, a conductor and locomotive engineer employed by Defendant from November 1999 to February 2002, submitted an affidavit in which he stated that he observed large pieces of rock, coke, debris and other conditions that were potential walking hazards present in the yard; that the area of the yard beyond the re-crew area consisted primarily of mainline ballast that was difficult to walk on and that there was insufficient lighting at night and debris on the walkway; that trains

often stopped short of the re-crew area, causing employees to have to walk on the mainline ballast; and that railway officials were aware of the conditions, but did not correct the problem.

Michael McClure, another employee who worked at the Lima yard, testified that he observed pieces of rock, coke, metal, debris and other unsafe walking hazards in the yard outside the re-crew area; that the lighting was virtually nonexistent at night and it was difficult to see the ground; that mainline ballast was present on the ground outside the re-crew area; and that company officials were aware of the unsafe conditions.

Despite this evidence, the district court granted Defendant's motion for summary judgment on April 18, 2005. Plaintiff filed this timely appeal on May 5, 2005.

## II.

We review a district court's grant of summary judgment *de novo*. *Gerbec v. United States*, 164 F.3d 1015, 1018-19 (6th Cir. 1999). "Summary judgment is appropriate so long as the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Williams v. Int'l Paper Co,*, 227 F.3d 706, 710 (6th Cir. 2000) (quoting *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997)). When determining whether to reach this conclusion, this Court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Id*; *see also Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998).

## III.

"We recognize FELA to be a remedial and humanitarian statute . . . enacted by Congress to afford relief to employees from injury incurred in the railway industry." *Hardyman v. Norfolk & Western Ry Co.*, 243 F.3d 255, 258 (6th Cir. 2001) (citations and quotations omitted). "Congress intended FELA to be a departure from common law principles of liability as a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Id.* (citations and quotations omitted). To that end, FELA provides in pertinent part the following:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. "[A] FELA plaintiff asserting a cause of negligence against its employer 'must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Hardyman*, 243 F.3d at 258 (quoting *Adams v. CSX Transp.*, 899 F.2d 536, 539 (6th Cir. 1990)). In FELA cases,

> [The] plaintiff must present more than a scintilla of evidence to prove that (1) an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad, (2) the employment was in the furtherance of the railroad's interstate transportation business, (3) the employer railroad was negligent, and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the Act.

*Id.* at 258-59 (citations omitted). Under FELA, the question of whether a jury question is presented is "limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." *Rogers v. Missouri Pac. R.R.*, 352 U.S.

500, 507 (1957); *Hardyman*, 243 F.3d at 259 ("The test for causation in FELA cases is whether an employer's actions played any part at all in causing the injury."); *see also Adams*, 899 F.2d at 539 ("The causation test is whether 'employer negligence played any part, even the slightest, in producing the injury' for which the plaintiff seeks recovery."). "A plaintiff pursuing a claim under FELA is required to 'present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more.'" *Hardyman*, 243 F.3d at 259.

We conclude that Plaintiff has provided enough evidence of Defendant's negligence to create a jury question and to survive summary judgment. Plaintiff was injured while working within the scope of his employment with the railroad. Plaintiff presented evidence from other railroad employees and experts that Defendant railroad (1) failed to stop the train at the appropriate location that would have allowed plaintiff to board over a safer walking surface; and (2) that Defendant failed to adequately light the rail yard, which directly contributed to Plaintiff's injury because Plaintiff was unable to see where he was going. These two allegations provide more than a scintilla of evidence that Defendant was at least partially liable for Plaintiff's injury. Contrary to the district court's conclusion, Plaintiff does not have to know what he stepped on in order to establish causation because Plaintiff's claim is that Defendant's failure to properly light the area where he had to walk was what caused him to misstep and injure himself in the first place. It is not for us to decide whether the area was in fact improperly lit or whether it was the ballast that Plaintiff tripped over. Those are questions for the jury, and in light of the evidence presented thus far, the case should survive summary judgment and the jury should be given the opportunity to decide the matter.

IV.

For the foregoing reasons, we **REVERSE** the district court's grant of Defendant's motion for summary judgment, and **REMAND** this case for further proceedings.